STATE OF NEBRASKA, APPELLEE, v. JOHN A. SCOTT, APPELLANT.

263 N. W. 2d 659

Filed March 8, 1978.  No. 41462.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

John Scott, defendant and appellant herein, was charged with murder in the perpetration of, or attempt to perpetrate, a robbery under section 28-401, R. R. S. 1943; and with shooting with intent to kill, wound, or maim under section 28-410, R. R. S. 1943. A jury found the defendant guilty as charged, and his motion for new trial was overruled. He has appealed from his convictions to this court, contending that the District Court erred in failing to grant his motions for a mistrial and a directed verdict, and in failing to instruct the jury properly with respect to the issue of whether he effectively waived his constitutional rights before making statements to police officers. We affirm the judgment of the District Court.

At approximately 5 p.m., on February 18, 1977, an intruder entered the home of William and Bertha McCormic in Omaha and demanded money at gunpoint. A scuffle ensued, and Mr. McCormic was shot twice and killed, and Mrs. McCormic was shot twice and wounded. Mr. McCormic was 92 years of age at the time. Mrs. McCormic, age 83, has impaired vision and could not describe her assailant with any specificity.

The only clue to the identity of the perpetrator was an unusual shoeprint left at the scene of the crime. Police detectives ascertained that only two shoe stores in Omaha sold a brand of shoes which would make such a print, and police officers were advised to look for persons wearing that distinctive type of shoe. On February 22, 1977, the defendant was arrested after a police officer discovered him wearing

shoes which made prints similar to the one found at the scene of the crime.

The defendant was questioned twice on the night of February 22, 1977, and once on the morning of the following day. Before questioning the defendant on each occasion, police detectives advised the defendant of his right to remain silent and to have the assistance of an attorney as required by Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The police officers testified that the defendant waived such rights, and rights advisory forms signed by the defendant were received in evidence. In the initial interrogation, the defendant denied that he had committed the crimes. In the second, however, he admitted his guilt, took officers to the scene of the crime, and showed them a vacant lot where he stated he had disposed of the murder weapon. The police officers were unable to find the weapon. The confession and admissions of the defendant were detailed, and included descriptions of the scene of the crime, which were corroborated by the physical evidence discovered by the police.

At trial, an expert witness testified that the shoeprint found at the scene of the crime matched the design and size of a print made by a shoe the defendant was wearing when arrested, and that defendant's shoe could have made the shoeprint. He could not make a positive identification, however, as he could not find a sufficient number of "individual characteristics" on defendant's shoe, which had been purchased about 2 months before the crime.

Other evidence relevant to defendant's guilt was that he was with his mother a short distance from the scene of the crime shortly before 5 p.m., on February 18, 1977. He left his mother at that time, and returned to his home between 5:30 and 6 on that day.

At trial the defendant repudiated his confession, stating that he confessed because the police threatened to charge him with several robberies if he did

not confess to the shootings, and because he was frightened. The defendant admitted that he had been advised of his Miranda rights each time before the police questioned him, but stated he did not understand that he had the right to have a lawyer present at the interrogations if he desired. The rights advisory forms signed by the defendant and the testimony of police officers indicated that the defendant was specifically advised he had the right to have an attorney present during the questioning, and that a lawyer would be appointed if he could not afford to hire his own attorney.

Defendant's first contention is that the trial court erred in refusing to grant a mistrial because of prejudicial acts and statements of witnesses at the trial. When Mrs. McCormic left the witness stand she stumbled and began to weep because of an injury to her leg. Her granddaughter called for the assistance of a doctor at that time. Defendant moved for a mistrial on the ground that the incident was prejudicial to him because of the sympathy that the jury would have for Mrs. McCormic. The trial court overruled the motion, noting that the witness had shown no emotion during her testimony, and that her weeping was the result of her stumbling and hurting her leg, and was not related to her testimony in the case. The court admonished the jury to not consider the incident because it had no bearing on the guilt of the defendant.

It is apparent that the above incident was not ground for a mistrial. When there are outbursts of emotion in the courtroom, it is within the sound discretion of the trial court to deal with them in such a manner as to best preserve the judicial atmosphere and insure a fair and impartial trial for the defendant. Wamsley v. State, 171 Neb. 197, 106 N. W. 2d 22 (1960). In the present case, the weeping of the witness was not related to her testimony at trial, and the trial court properly admonished the jury to dis-

regard the incident because it had no bearing on the guilt of the defendant. The overruling of the motion for a mistrial was not error. Wamsley v. State, *supra*.

A second incident occurred when the prosecutor asked a police officer whether the defendant's shoes appeared to be in the same condition at trial as they were when taken from the defendant after his arrest. The police officer answered in the affirmative, except that there was "what appears to be blood on this shoe." The trial court overruled defendant's motion for a mistrial, and instructed the jury to disregard the statement concerning blood because there had been no showing that there was in fact blood on the shoe. An analogous incident occurred in State v. Escamilla, 187 Neb. 457, 191 N. W. 2d 548 (1971), where a police officer made improper comments about items of evidence, and where the trial court sustained an objection to the comments and instructed the jury to disregard them. We found no prejudicial error, and stated that if there was error, it was harmless, and was cured by the court's action. The same may be said in the present case. Although the comment of the police officer was improper, it cannot be considered prejudicial error in view of the remedial action taken by the trial court.

Defendant next contends that the evidence was insufficient to sustain his conviction because his confession was not sufficiently corroborated by other evidence. The rule is that a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but that it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation. See, State v. Moss, 182 Neb. 502, 155 N. W. 2d 435 (1968); Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1 (1950). Where the crime involves physical damage to a person or property, the prosecution must generally show that the

injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. In such a case there need be no link, outside the confession, between the injury and the accused who admits having inflicted it. Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); United States v. Stabler, 490 F. 2d 345 (8th Cir., 1974).

In the present case there can be no dispute that the evidence was sufficient to permit the jury to conclude that Mr. McCormic was killed, that Mrs. McCormic was shot, and that some person was criminally culpable. Defendant's confession, standing alone, was sufficient evidence to establish the link between the crimes and the defendant. In addition, the evidence concerning the shoeprint and the evidence that the defendant was in the vicinity of the scene of the crimes shortly before their commission was corroborative evidence of his guilt.

Defendant's final assignment of error is that the District Court erred in failing to instruct the jury that it should disregard the defendant's confession and admissions unless it found that the defendant had been advised of his Miranda rights and had knowingly and intelligently waived those rights before making statements to the police. The trial court did instruct the jury in accordance with NJI No. 14.52, advising the jury that it should disregard the defendant's confession or admissions if it found that such admissions or confession were not freely, voluntarily, and intelligently made by the defendant. This instruction was directed at the issue of whether the admissions or confession were procured or induced by promises, or obtained as the result of force, fear, oppression, or coercion. However, the trial court did not give an instruction in accordance with NJI No. 14.52A, which relates to the issue of whether a defendant has been advised of, and has waived, his Miranda rights prior to questioning by

the police. The defendant did not object to the proposed instructions on the ground that the instruction, NJI No. 14.52A, or a similar instruction, should be given.

In Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), the Supreme Court held that before an admission or confession of a defendant may be admitted in evidence, a hearing must be held outside the presence of the jury, and a finding made by the trial court that the confession or admission was voluntary. In Lego v. Twomey, 404 U. S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972), the Supreme Court held that there is no constitutional requirement that the jury decide anew the question of whether a confession was voluntary once the judge had already decided that issue after a Jackson v. Denno hearing.

States have adopted two different procedures with respect to the issue of whether a jury should ultimately determine the voluntariness of a confession. Under the "orthodox" rule, the trial judge rules on the voluntariness of the confession for the purposes of admissibility in evidence; the jury does not redetermine that issue, but considers the issue of voluntariness only as affecting the weight or credibility of the confession. Under the Massachusetts or "humane" rule, the judge rules on the voluntariness of the confession before allowing it in evidence, and if it is admitted, the jury is instructed that it must also find the confession to be voluntary before it may consider it. See, Jackson v. Denno, *supra*; Annotation, Constitutional Aspects of Procedure for Determining Voluntariness of Pretrial Confession, 1 A. L. R. 3d 1251.

Nebraska has followed the Massachusetts rule since at least 1910. See Heddendorf v. State, 85 Neb. 747, 124 N. W. 150 (1910). Since that time this court has repeatedly held that a defendant is entitled to have the jury determine whether his confession was voluntary, even though the trial court has already so

found. See, State v. Breaker, 178 Neb. 887, 136 N. W. 2d 161 (1965); State v. Longmore, 178 Neb. 509, 134 N. W. 2d 66 (1965); State v. Ross, 183 Neb. 1, 157 N. W. 2d 860 (1968). In State v. McDonald, 187 Neb. 752, 194 N. W. 2d 183 (1972), where the trial court failed to instruct the jury in accordance with NJI No. 14.52, this court stated: "Where the question of the voluntariness of an oral or written confession is in issue, the court must properly instruct as to what constitutes a voluntary confession, whether requested or not. It is the duty of the court not only to instruct as to what constitutes a voluntary confession, but also to instruct the jury to disregard the alleged confession if found to be involuntary. * * * The failure of the trial court to give this instruction (NJI No. 14.52) amounted to a withdrawal of the issue of voluntariness from the jury's consideration and requires reversal." Defendant urges this court to adopt the same rule with respect to NJI No. 14.52A.

It is obvious that the Nebraska rule concerning an ultimate jury determination of the voluntariness of a confession was adopted long before Miranda. The question of whether a confession was made as the result of coercion, deception, or inducement by promises is, of course, quite different than the question of whether a defendant was advised of, and waived, his rights to remain silent and to have the assistance of an attorney before he is questioned by police. In People v. Sanchez, 65 Cal. 2d 814, 56 Cal. Rptr. 648, 423 P. 2d 800 (1967), vacated on other grounds, 70 Cal. 2d 562, 75 Cal. Rptr. 642, 451 P. 2d 74 (1969), the court noted this difference and found no reversible error where the trial court failed to give a Miranda instruction similar to NJI No. 14.52A, even though an instruction like NJI No. 14.52 was required. The same result was reached in State v. Hampton, 61 N. J. 250, 294 A. 2d 23 (1972); and State v. Perry, 14 Ohio St. 2d 256, 237 N. E. 2d 891 (1968). See, also, III Wigmore on Evidence, § 861a, pp. 593

to 596. Other courts have held that where the defendant does not request a Miranda instruction, or does not offer a proper Miranda instruction, it is not error for the trial court to fail to give such an instruction. See, United States v. Kress, 446 F. 2d 358 (9th Cir., 1971); Thessen v. State, 454 P. 2d 341 (Alas., 1969).

We conclude that the trial court did not err in this case by failing to give NJI No. 14.52A, or a similar instruction, particularly in view of the fact that the defendant did not request it. No prior Nebraska cases require that NJI No. 14.52A be given. In State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595 (1974), on which defendant relies, both NJI Nos. 14.52 and 14.52A were given, and the issue was whether it was error for the trial court to admit the defendant's confession in evidence in the first instance. Notwithstanding a statement in a syllabus indicating to the contrary, which is not contained in the opinion itself, that case does not require that NJI No. 14.52A be given.

We have reviewed the contentions of the defendant and find them to be without merit. The judgment of the District Court is affirmed.

AFFIRMED.